# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIRIAM VALLE, | : | No. 3:16cv1524 |
|     **Plaintiff** | : | |
|   v. | : | (Judge Munley) |
| | : | |
| FRANK MARTZ COACH COMPANY, EDWARD L. STELTZ, and LISA ROHLAND, | : | |
|     **Defendants** | : | |

## **MEMORANDUM**

Before the court for disposition is a motion for summary judgment filed by Defendants Frank Martz Coach Company, Edward L. Steltz, and Lisa Rohland. The matter has been fully briefed and is ripe for disposition.

**Background**

Plaintiff began working for Defendant Frank Martz Coach Company (hereinafter "Martz") as a Ticket Agent at the Wilkes-Barre, PA terminal in August of 2011. (Doc. 14, Def. Stmt. of Mat. Facts (hereinafter "SOF") ¶ 4).[1] Plaintiff worked in this capacity until January 27, 2016, when the defendants terminated her employment. (Id.)

---

[1] For this brief factual background section, we will cite to the defendants' statement of material facts as to which no genuine issue remains to be tried. The plaintiff generally agrees with these background facts.

On January 14, 2016, plaintiff advised her supervisor, Defendant Edward L. Steltz (hereinafter "Steltz"), that she would be undergoing breast surgery, and needed to apply for work leave pursuant to the Family and Medical Leave Act (hereinafter "FMLA"). (Id. ¶ 48). After properly completing her request form, the defendants approved plaintiff's FMLA leave. (Id. ¶ 50). Plaintiff was scheduled to return to work following her surgery on January 25, 2016. (Id. ¶ 51). Due to complications, however, plaintiff's return date was changed to January 29, 2016. (Id. ¶ 52).

On January 26, 2016, Defendant Steltz contacted plaintiff and advised her that she needed to meet with him at corporate headquarters prior to reporting to work on January 29, 2016. (Id. ¶ 25). Defendant Steltz informed plaintiff that he could not discuss the reason for the meeting until they were face-to-face. (Id. ¶ 27). In response, plaintiff insisted on meeting as soon as possible. (Id. ¶ 28). The next day, on January 27, 2016, plaintiff met with Defendant Steltz, her union representative Sharooz Pourmonir [2], Union President Joe Kulakowski, and John Rice, who was the Director of Safety for Martz. (Id. ¶ 31).

The purpose of this meeting was to advise plaintiff that an investigation had been conducted concerning allegations from her coworkers that she had made

---

[2] The record reflects several different first names for this witness. For our purposes, we will use the name referenced in Defendants' SOF, Sharooz Pourmonir.

violent threats. (Id. ¶ 32). According to the defendants, on January 26, 2016, Pourmonir contacted Defendant Steltz concerning an "urgent situation" that required a meeting with Defendant Steltz, Defendant Lisa Rohland, the Terminal Director at Martz, and John Rice. (Id. ¶ 10). At this meeting, Defendant Steltz, Defendant Rohland, and Rice were informed that plaintiff was threatening a coworker, Ricardo Lema, and making "concerning comments" about Defendant Rohland. (Id. ¶ 12). This information came to light by way of Lori Danko, a Ticket Agent at Martz, who advised Defendant Steltz, Defendant Rohland, and Rice that plaintiff repeatedly told her that Lema "better watch out." Plaintiff allegedly commented that "[Lema] rides his bike home late at night" and that "[she] know[s] people who can take care of that." (Id. ¶13). Danko also informed them that plaintiff frequently stated things about Defendant Rohland such as "Lisa doesn't know who she's dealing with" and "she's gonna get hers." (Id. ¶ 14). Danko conveyed that she feared for her safety if plaintiff found out that she reported these comments to supervisors. (Id. ¶ 16).

As a result of these allegations, Defendant Steltz initiated an investigation into these matters. (Id. ¶ 18). After talking with other Martz employees who worked at the terminal as well as a Martz customer who had reported similar concerns about plaintiff hurting Lema, Defendant Steltz scheduled the January 27, 2017 meeting with plaintiff. (Id. ¶ 19).

3

During this meeting, plaintiff denied making these threats. Defendant Steltz then advised plaintiff that Martz took the safety of its employees extremely seriously, and terminated plaintiff. (Id. ¶ 34). The termination occurred two days before plaintiff's scheduled return to work. (Id.)

Based upon these facts, plaintiff filed a two-count complaint on July 25, 2016, against Defendant Martz, Defendant Steltz, and Defendant Rohland. She raises an interference claim as well as a retaliation claim under the FMLA. The defendants filed the instant motion for summary judgment on May 9, 2017, bringing this case to its present posture.

**Jurisdiction**

The court has federal question jurisdiction over this FMLA action. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district court jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief).

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

4

moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED R. CIV. P. 56(C)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits,

5

depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. Id. at 324.

**Discussion**

Plaintiff brings both interference and retaliation claims pursuant to the FMLA. The FMLA contains two distinct provisions prohibiting employers from: (1) interfering with an employee's exercise of her right to take reasonable leave for medical reasons; and (2) discriminating or retaliating against an employee who exercises this right. 29 U.S.C. § 2615(a); see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F. 3d 294, 301 (3d Cir. 2012); Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005).

The defendants argue that plaintiff's FMLA interference claim in Count I is identical to her FMLA retaliation claim in Count II, and should therefore be dismissed as moot. We agree. The law provides that in a situation where a plaintiff presents both an interference claim and a retaliation claim on the basis that a defendant took adverse employment action against him because he requested FMLA leave, those claims should be analyzed as a single FMLA retaliation claim. See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 147 (3d Cir. 2004) (plaintiff claimed that his FMLA leave was used by the employer as a negative factor in the decision to discharge him, thus the court characterized the claim as a retaliation claim rather than an interference claim);

6

Mascioli v. Arby's Restaurant Group, Inc., 610 F. Supp. 2d 419 (W.D. Pa. March 16, 2009) ("Plaintiff's interference claim is different ... because plaintiff claims her right to FMLA leave was interfered with after she requested leave.... Plaintiff's argument with respect to her interference claim is that defendant took an adverse employment action because she requested leave. This is, in essence, identical to her retaliation claim in count two").

Here, plaintiff asserts that the defendants terminated her from employment with Martz because she took FMLA leave, a hallmark FMLA retaliation claim. As such, we will dismiss plaintiff's FMLA retaliation claim, and analyze plaintiff's case under an FMLA retaliation claim framework.

**FMLA Retaliation Claim**

To establish an FMLA retaliation claim, the plaintiff must prove that: (1) she engaged in a protected activity under the FMLA; (2) she experienced an adverse employment action following the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). Here, defendants' motion for summary judgment attacks the third element—the existence of a causal link between the protected activity and the adverse employment action.

First, defendants argue that summary judgment is appropriate because the plaintiff admitted at her deposition that defendants did not terminate her because

she took FMLA leave. Specifically, after a series of back and forth dialogue regarding the timeframe of plaintiff's termination, defense counsel asked plaintiff: "You were not terminated because you took FMLA, correct?" (Doc. 13-6, Pl.'s Dep. (hereinafter "Pl.'s Dep.") at 51:1-2). Plaintiff responds to this question by stating: "I was not terminated because I took an FMLA." (Id. 51:5-6).

Defendants call the court's attention to this testimony in bold lettering numerous times throughout their brief. We find defendants' emphasis and reliance on this testimony unconvincing. Plaintiff's "admission" appears to be a response of non-lawyer to clever, potentially manipulative, questioning. A review of plaintiff's deposition suggests that plaintiff was confused by the question, as defense counsel asked it several times and received a variety of responses. Further, the fact that this case exists at all indicates that plaintiff believes the defendants violated her FMLA rights. Thus, we reject this argument and continue our analysis with whether plaintiff has established a causal connection between her termination and her use of FMLA leave.

"To demonstrate a causal connection, a plaintiff generally must establish 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism, coupled with timing[.]' " Budhun v. Reading Hosp. Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014) (quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259,

8

267 (3d Cir. 2007)); see also Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 196 (3d Cir. 2015) (noting that causation may be established by suggestive timing or other circumstantial evidence that supports the inference of retaliation). "Whether a causal link exists 'must be considered with a careful eye to the specific facts and circumstances encountered.' " Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.5 (3d Cir. 2000)). The Third Circuit has also emphasized that:

> It is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn….When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation.

Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997).

Regarding temporal proximity, the Third Circuit has held that an adverse employment action occurring within ten days from the date of the protected action is unusually suggestive. See, e.g., Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003) (ten days deemed unduly suggestive); Lichtenstein, 691 F.3d at 307 (determining that termination less than a week after the plaintiff invoked her right to FMLA leave established causation); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (reversing summary judgment for the defendant when plaintiff was fired two days after his employer received notice of his EEOC complaint).

The Third Circuit, however, has noted that a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive. See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (three months is not unusually suggestive); Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (two months is not unusually suggestive); Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (finding temporal proximity not unusually suggestive when three weeks had elapsed between protected activity and adverse employment action); Farrell, 206 F.3d at 280 (finding that temporal proximity greater than ten days requires supplementary evidence of retaliatory motive).

In the instant matter, plaintiff's allegations establish a close temporal proximity demonstrating a causal link between the protected activity and the adverse employment action. Plaintiff requested FMLA leave on January 14, 2016. (Doc. 14, Def. SOF ¶ 48). Shortly thereafter, defendants approved plaintiff's FMLA leave. (Id. ¶ 50). Plaintiff began her FMLA leave sometime around January 19, 2017, and was scheduled to return on January 29, 2016. (Id. ¶ 7). Defendants terminated plaintiff's employment on January 27, 2016, two days before she was scheduled to return. (Id. ¶ 6). Thus, we find that this adverse employment action, which occurred eight days after plaintiff's FMLA leave period began, is unusually suggestive of discrimination.

In accordance with the law, defendants have answered plaintiff's prima facie case by pointing to a legitimate, non-discriminatory reason for their decision to terminate plaintiff. See Ross v. Gilhuly, 755 F.3d 185, 193 (3d Cir. 2014). Defendants maintain that they terminated plaintiff for the threats that she made to and regarding coworkers prior to her termination. Specifically, threats that a fellow employee, Ricardo Lema, "better watch out" because "he rides his bike home late at night" and "[plaintiff] knows people who could take care of that" as well as threats that Defendant Rohland "doesn't know who she's dealing with." (Doc. 13-5, Def.'s Br. in Supp. at 4). After Defendant Steltz learned of plaintiff's threats on January 26, 2016, he conducted an investigation by interviewing terminal staff. Defendant Steltz, who was ultimately in charge of hiring and firing, made the determination based on the evidence collected during the investigation that the threats were credible and that plaintiff "could no longer be safely employed." (Id. at 18).

Having pointed to a legitimate, non-discriminatory reason for plaintiff's termination, that being her misconduct at the workplace, plaintiff must now establish, by a preponderance of the evidence, that the defendants' proffered legitimate, non-discriminatory reason is pretextual. Burton v. Teleflex Inc., 707 F.3d 417, 426-27 (3d Cir. 2013). The Third Circuit has recognized two ways in which a plaintiff can demonstrate that the defendants' legitimate, non-

discriminatory reason is pretextual. See Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994). Plaintiff can (1) point to evidence that would allow a factfinder to disbelieve the defendants' reason for the adverse employment action by way of weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons; or (2) point to evidence that would allow a factfinder to believe that an invidious discriminatory reason was "more likely than not a motivating or determinative cause" of the employer's action. Id. at 764.

    Plaintiff, in her brief, has pointed to circumstantial evidence to discredit the defendants' proffered reason for her termination. First, plaintiff argues that the temporal proximity in this case is unusually suggestive. For the reasons we discussed earlier, we agree. Next, plaintiff argues that there are several inconsistencies in the deposition testimony of the individuals responsible for investigating the alleged threats. Plaintiff points to deposition testimony in which Defendant Steltz, Defendant Rohland, and John Rice contradict each other on a number of issues. For example, the three disagree as to whether handwritten notes were taken during the course of the investigation—Defendant Steltz testified that only he and Defendant Rohland took handwritten notes during this time, and that he subsequently destroyed his (Doc. 13-6, Steltz Dep. (hereinafter "Steltz Dep.") at 41:25-42:2); Defendant Rohland testified that she in fact did not

take notes (Doc. 13-6, Rohland Dep. at 43:14-18); and John Rice testified that he took notes but threw them away during the course of the investigation. (Doc. 13-6, Rice Dep. (hereinafter "Rice Dep.") at 28:10-17). Defendant Steltz and Rice also disagree as to whether it was a joint decision between them to terminate plaintiff—Defendant Steltz testified that it was a joint decision (Steltz Dep. at 37:4-8), Rice testified that it was not a joint decision. (Rice Dep. at 52:11-18).

Plaintiff claims that the "most telling" evidence in this case is that Defendant Steltz testified that the first time the alleged threats came to light was when plaintiff was out on approved FMLA leave. (Steltz Dep. at 66:4-11). Finally, plaintiff notes that none of the employees interviewed by Defendant Martz as part of their investigation can offer either a specific or approximate date as to when any of the alleged threats were made, including Lori Danko, who claims to "have heard these statements made in excess of fifty (50) times." (Doc. 13-6, Danko Dep. at 15:17-20).

After a careful review, we find that a reasonable factfinder could conclude that plaintiff was terminated for taking FMLA leave and that the defendants' given reason for terminating her was pretextual. Accordingly, we find that plaintiff's FMLA retaliation claim survives summary judgment.

## Conclusion

For the foregoing reasons we will deny defendants' motion for summary judgment on plaintiff's FMLA retaliation claim. We will dismiss plaintiff's FMLA interference claim as moot. An appropriate order follows.

**BY THE COURT:**

**Date: November 16, 2017**               **s/ James M. Munley_____
JUDGE JAMES M. MUNLEY
United States District Court**